**SO ORDERED.**

**SIGNED this 07 day of March, 2008.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| SUSAN O'BLENES | 07-02484-5-ATS |
| DEBTOR | |

### ORDER REGARDING OBJECTION TO CONFIRMATION AND OBJECTION TO VALUATION OF COLLATERAL

The matters before the court are the objection filed by Bank of America, N.A. to confirmation of the debtor's chapter 13 plan and Bank of America's objection to valuation of collateral. A hearing was held in Raleigh, North Carolina on February 5, 2008.

Bank of America, which holds a claim secured by a purchase money security interest on the debtor's 2007 Volkswagen Rabbit, contends that its secured claim is protected from bifurcation by the "hanging paragraph" of 11 U.S.C. § 1325(a). The chapter 13 debtor, Susan O'Blenes, maintains that the "hanging paragraph" does not apply because the automobile was not purchased for the debtor's "personal use." The issues before the court are the meaning of the undefined term "personal use of the debtor" and whether "personal use of the debtor" includes a vehicle purchased by the debtor for the exclusive use of her 16-year-old daughter.

Susan O'Blenes filed her petition for relief under chapter 13 of the Bankruptcy Code on November 2, 2007. The debtor owns a 2007 Volkswagen Rabbit that she acquired in 2006 for a purchase price of $23,448. The automobile was purchased by the debtor, a single parent, for the sole use of her daughter, who was 16 years old at the time. The debtor's daughter, Molly (not her real name), could not have obtained credit to purchase the car, the debtor obtained the financing needed to buy the car, and the title to the car was taken in the debtor's name. Molly selected the car and she has been, with the exception of the few times that the debtor drove the car to have the oil changed, the Rabbit's exclusive driver. She drives the car to school, to work, to doctor's appointments, and to transport her younger brother to school and to social engagements. Her wages from her part-time job at a Target store are less than the monthly car payments to Bank of America, and, although she contributed to those payments up to the time of the filing of her mother's bankruptcy petition, the payments are currently made solely by the debtor, who is presently unemployed. Molly is now 18 years old and a high school senior. After she graduates from high school, she plans to attend college in Florida and to take the Volkswagen Rabbit with her.

The debtor's chapter 13 plan provides for payments of $600 for 3 months and payments of $1,516 for 57 months. The debtor proposes to write down Bank of America's secured claim to $15,000 and to "cram down" the payment of the claim through her chapter 13 plan. The balance of Bank of America's claim would be treated as an unsecured claim.

Bank of America objects to the bifurcation of its claim and to the $15,000 valuation, contending that its claim is protected from bifurcation by the "hanging paragraph" in § 1325(a) of the Bankruptcy Code. The "hanging paragraph" is an unnumbered provision that was added to the end of § 1325(a) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.

2

L. 109-8, 119 Stat. 23, § 306 (April 20, 2005) ("BAPCPA"), and has been the subject of many court decisions interpreting its meaning. The "hanging paragraph" provides:

> For purposes of paragraph (5) [of § 1325(a)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor . . . .

11 U.S.C. § 1325(a) (2005).

It is undisputed that Bank of America holds a purchase money security interest in the Volkswagen that was incurred within the 910 days preceding the filing of the bankruptcy petition, and the only disagreement is whether or not the Volkswagen was "acquired for the personal use of the debtor."

The words "personal use of the debtor" are quite simple, but the task of interpreting their meaning in the context of the hanging paragraph is not.

The first step to determining the meaning of a statute is to consider the statute's plain language. "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023 (2004). The problem here is that the word "personal" has several plain meanings. Personal may mean specific to an individual. For example, the word "personal" on an envelope signifies that it is to be opened only by the specified addressee. Also, "personal" may stand for a use other than a business use. To complicate things further, the word "personal" when combined with another word can create a term that has a meaning of its own. Examples include personal property, personal computer, personal trainer, and personal effects.

3

Legislative history at times can be helpful, but as is the case with this provision and with many others added by BAPCPA, the legislative history sheds no light on Congressional intent because the legislative history simply mirrors the new language in the statute. Fortunately, there are rules of statutory construction that are helpful.

One useful approach is to compare the term with its usage in other sections of the Bankruptcy Code. The term "personal use" does not appear elsewhere in the Bankruptcy Code, but the phrase "personal, family, or household use," as noted by the court in In re Jackson, 338 B.R. 923, 926 (Bankr. M.D. Ga. 2006), is used in multiple sections of the Code, including §§ 101(8), 365(d)(5), 506(a)(2), 507(a)(7), and 522. "The Court of Appeals for the Fourth Circuit recently observed that the use of a particular phrase in one statute but not in another 'merely highlights the fact that Congress knew how to include such a limitation when it wanted to.'" In re Paschal, 337 B.R. 274, 279 (Bankr. E.D.N.C. 2006) (quoting In re Coleman, 426 F.3d 719, 725 (4th Cir. 2005)). The Coleman court, and this court in Paschal, "also quoted the Supreme Court's clear directive on this topic: 'Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Paschal, 337 B.R. at 279 (quoting Coleman, 426 F.3d at 725-6 (quoting Keene Corp. v. United States, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993) (internal quotation marks and alterations omitted))). The problem with drawing distinctions based on the differences in similar language is that it is sometimes it is difficult to know, especially under BAPCPA, whether Congress' use of slightly different language was intended to mean something other than the terms already included in the Code, or whether the differences are simply the result of sloppy drafting.

The bankruptcy court in In re Jackson concluded that by omitting the words "family or household," "Congress intended 'personal use' standing alone to have a different meaning," and found that "the vehicle must have been acquired for the use of a particular person – Debtor – for the hanging paragraph to apply."  Jackson, 338 B.R. at 926.  However, the bankruptcy court in In re Solis, 356 B.R. 398 (Bankr. S.D. Tex. 2006) found that the concepts of "personal," "family," and "household" are, as a practical matter, overlapping.  See Solis at 410.

But, whether or not "personal use" overlaps with "personal," family" and "household" is not determinative because the term "personal use" must be read in conjunction with the words "of the debtor," and not just read in isolation.  An important principle of statutory construction is that "courts should disfavor interpretation of statutes that render language superfluous."  In re Witt, 113 F.3d 508, 512 (4th Cir. 1997) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S. Ct. 1146 (1992)) (internal quotemarks omitted).  The words "of the debtor" place a limitation on the overlapping concepts of "personal" and "household or family" use and explain the absence of "household or family" use in the statute.  Had the statute included "household or family use" and excluded the  phrase "of the debtor," then the use of the vehicle by a family member could easily be read into the statutory terms.  Here, the absence of "household or family use," along with the inclusion of "of the debtor" shows the intent to limit the applicability of the statute to a vehicle used by the debtor, but not a family member of the debtor.  This interpretation is further supported by the omission of the words "or a dependent of the debtor."  The phrase "of the debtor or a dependent of the debtor" is used throughout the Bankruptcy Code, and the omission of "or a dependent of the debtor" from the hanging paragraph is significant, suggesting that "use of the debtor" means use specific to the debtor.

5

Bank of America argues that "personal use" means a non-business use, including family or household use, which benefits the debtor. Several well-reasoned bankruptcy court opinions support the bank's position, see In re Phillips, 362 B.R. 284 (Bankr. E.D. Va. 2007) and In re Solis, 356 B.R. 398 (Bankr. S.D. Tex. 2006), and the court agrees that "personal use" means non-business use. However, that is only one part of the inquiry. In addition to addressing the purpose for which the automobile was acquired, the court must also determine whether or not the automobile was purchased for the use of the debtor. The term "personal use of the debtor" raises two questions: "for whose use and for what purpose was the vehicle purchased?" Sovereign Bank v. Finnegan (In re Finnegan), 358 B.R. 644, 648 (Bankr. M.D. Pa. 2006).

The court agrees with those bankruptcy courts that have held that a vehicle that is used nearly exclusively by someone other than the debtor is not one acquired for the "personal use of the debtor." See In re Jackson, 338 B.R. 923 (Bankr. M.D. Ga. 2006) (vehicle purchased for use by debtor's wife); In re Lewis, 347 B.R. 769 (Bankr. D. Kan. 2006) (vehicle purchased for use of debtor's daughter); In re Finnegan, 358 B.R. 644 (Bankr. M.D. Pa. 2006) (vehicle purchased for use of debtor's husband's business); In re Davis, 2006 WL 3613319 (Bankr. M.D. Ala. 2006) (vehicle purchased for use solely by debtor's husband); In re Adams, 2007 WL 675958 (Bankr. M.D. Ga. 2007) (vehicle purchased for use of debtor's wife).

This interpretation is consistent with the principle that doubts involving the meaning of provisions of the Bankruptcy Code should be resolved in favor of an interpretation that favors equal distribution among creditors. The United States Supreme Court recently applied that principle in Howard Delivery Serv., Inc. v. Zurich American Ins. Co., 547 U.S. 651, 126 S. Ct. 2105 (2006), in which the court stated that "the Bankruptcy Code aims, in the main, to secure equal distribution

among creditors." 126 S. Ct. at 2109. In that case, the Court concluded that it was "far from clear" that an employer's liability to provide worker's compensation coverage came within the language of § 507(a)(5), which confers priority for contributions to an employee benefit plan arising from services rendered. 126 S. Ct. at 2116. For that reason, and because other factors also weighed against that categorization, the Court determined that "any doubt concerning the appropriate characterization . . . is best resolved in accord with the Bankruptcy Code's equal distribution aim." 126 S. Ct. at 2116. Limiting the application of the hanging paragraph to a narrow category of claims is in line with both the Code's goal of equal distribution and "the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress." 126 S. Ct. at 2109.

The Volkswagen Rabbit was acquired for a non-business use as Bank of America contends, but it was acquired for the sole use of the debtor's 16-year-old daughter and not for the "use of the debtor." Consequently, the "hanging paragraph" does not apply, and Bank of America's secured claim is not protected from bifurcation.

That determination, however, does not end the matter. The court cannot confirm the debtor's plan because the plan was not proposed in good faith as required by § 1325(a)(3). The treatment proposed for Bank of American's claim is simply not fair.

Just over a year before filing bankruptcy, Ms. O'Blenes purchased a new vehicle for her 16-year-old daughter. Her daughter drives the car to work, but does not make enough money to cover the car payments. Although her daughter paid a portion of the car payments prior to Ms. O'Blenes' bankruptcy filing, she now pays nothing toward the car. Ms. O'Blenes is currently unemployed, and the primary benefit she receives from her daughter having this car is that she does not have to drive

her son to social engagements on weekend nights. This same benefit hardly justifies retention of the automobile or writing down Bank of America's secured claim.

The bankruptcy court in In re Lewis, 347 B.R. 769 (Bankr. D. Kan. 2006), described a similar situation as follows:

> Before they filed for bankruptcy, the Debtors were neither using nor paying for the van. . . . [W]ithout suggesting they would take the van from the daughter and use it themselves, they proposed that they would start paying Wells Fargo for the van, splitting its claim into secured and unsecured portions, treating it as a secured creditor only to the extent of the value of the van, and discharging the rest of its claim. The only personal benefit the Debtors would receive from this proposal would be the satisfaction a parent can obtain by helping a child keep her vehicle. Unless the Debtors could obtain this satisfaction without using money that would otherwise go to unsecured creditors, the Court is convinced their proposal does not meet the good faith test.

Lewis, 347 B.R. at 774. Likewise, the bankruptcy court in In re Solis, 356 B.R. 398 (Bankr. S.D. Tex. 2006), found "it is simply not necessary to include the son's car in the plan to preserve property of the estate, to facilitate a financial reorganization, or to satisfy Debtor's legal obligation to her dependents. Debtor has articulated no justification for including her son's vehicle in the plan other than to act out her affection for her son." Solis, 356 B.R. at 414.

This court cannot confirm Ms. O'Blenes' plan as long as it proposes to bifurcate Bank of America's secured claim on a vehicle driven solely by the debtor's daughter. While bifurcation is not prohibited by the hanging paragraph of § 1325(a), the proposed treatment does not meet the good faith requirement of § 1325(a)(3).

Finally, Bank of America objected to the value of $15,000 given to the Volkswagen in the debtor's schedules and plan, but because the court will not allow the claim to be bifurcated, the value of the vehicle does not need to be established.

Based on the foregoing, Bank of America's objection to confirmation is **ALLOWED**, and its objection to valuation is moot and is **DISMISSED**.

**SO ORDERED**.

**END OF DOCUMENT**